UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

SAMUEL BOWENS,

                              Plaintiff,

-against-

OLD DOMINION FREIGHT LINE, INC.,

                              Defendant.
_____

Civil Case No.

## COMPLAINT

SAMUEL BOWENS by and through his attorneys, BLAU LEONARD LAW GROUP, LLC. and RUPPERT MANES NARAHARI LLC., as and for his Complaint against OLD DOMINION FREIGHT LINE, INC., allege upon personal knowledge and upon information and belief as to all other matters, as follows:

### NATURE OF THE CLAIMS

1. Plaintiff brings this Complaint to recover damages under Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981 et seq. Plaintiff alleges that he was subjected to persistent racial harassment by a supervisor and members of Defendant's staff. Plaintiff further alleges that he was terminated after he was found to have overheard a particularly egregious racial statement made by a staff member.

### PARTIES

2. Plaintiff, SAMUEL BOWENS ("Plaintiff"), is a resident of Mahwah, New Jersey who has been injured and damaged by the conduct and actions as described herein.

3. Defendant, OLD DOMINION FREIGHT LINE, INC. is a foreign business corporation created and existing under the laws of the State of Virginia.

4. OLD DOMINION FREIGHT LINE, INC. has its principal place of business at 500 Old Dominion Way, Thomasville, North Carolina, 27360.

5. OLD DOMINION FREIGHT LINE, INC. regularly transacts business in New York and maintains a business at 300 Ballard Rd, Middletown, New York 10941.

## JURISDICTION AND VENUE

6. This action arises under Section 1981. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

7. The Defendant has a regular place of business in the Southern District of New York, and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York. Therefore, this action is within the jurisdiction of this Court, and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTS

8. Plaintiff began working for Defendant as a truck driver in 2009.

9. Initially, he was assigned to work out of the company location in Boonton, New Jersey. He spent several years at that location where he excelled at his job.

10. When the company decided to open a new location in Middletown, New York, Plaintiff accepted a transfer to the new facility with the hope that he would continue to grow in his career within the company.

11. However, he soon learned that the culture of the Middletown location was much different that his past experience in Boonton. He began to experience persistent and egregious acts of racial discrimination and harassment.

12. Specifically, Plaintiff is an African American male, one of only three (3) total African-American men who worked at the Middleton location at the time.

13. Soon after his transfer, Plaintiff took notice of comments that were frequently made by his co-workers. In particular, a truck dispatcher named Kathy Ford made frequent comments to him which were racial in nature.

14. For months, he shrugged off the comments and focused on doing his job. However, at one point in 2016, Ms. Ford made a comment to Plaintiff to the effect of: "I'll have your black ass."

15. Plaintiff reported the instance to the human resources department and a terminal manager. Ms. Ford was required to participate in racial sensitivity counseling. At first, things seemed to improve. However, it was not long until the racial comments began again.

16. Although Plaintiff was a successful and experienced driver, he began to receive fewer desirable roots and assignments. This was shocking to him, as customers and management alike frequently praised his work and requested him for specific jobs.

17. Additionally, by early 2020, he had the third-most seniority at the Middleton location. Despite this, his main run was taken away and given to a white employee who had been with the company for less than one year.

18. Despite Plaintiff's workload being compromised, he continued to perform with the utmost professionalism and pleasantness. He still received frequent praise from management.

19. In March 2020, Plaintiff reported to work and took a seat in the drivers' room while he awaited his assignment for the day. During this time, Plaintiff noticed

that two managers and Ms. Ford were talking in the dispatcher's office. A side window to the office was open, and he overheard those inside discussing the fact that the workload was slow that day.

20. Plaintiff then heard someone state: "Maybe we should start getting rid of the coons." Casual laughter followed the comment. When those inside the room noticed Plaintiff immediately after the comment was made, someone shut the window and the conversation stopped.

21. Plaintiff received his assignment for the day shortly after.

22. He was shocked to hear this cruel and antiquated slur. However, again, he continued to do his job and attempted to cope with the horrendous treatment.

23. About two weeks later, Plaintiff was informed that he was terminated from his position. When he inquired as to why, he was told that he had made a mistake with his vehicle time sheet. Plaintiff requested to see the error, but he was denied the opportunity to review the sheet.

24. After nearly twelve (12) years of employment, Plaintiff had never received any disciplinary action. Further, the time sheet system used by Defendant was new, and the employees had only recently been trained to use it. Rather than show Plaintiff his error or give him a warning, he was outright terminated without explanation.

## COUNT I

**RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866**

25. Plaintiff repeats and reallege all preceding paragraphs, as if fully set forth herein.

26. Section 1981 of the Civil Rights Act of 1866 has been interpreted by the United States Supreme Court to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics" (*St. Francis College v. Al-Khazraji*, 481 US 604, 613 [1987]).

27. In order for a plaintiff to prevail on a claim under Section 1981, he or she "must initially plead and ultimately prove that, but for race, [he or she] would not have suffered the loss of a legally protected right" (*Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 18-1171, 2020 WL 1325816, at *7 [US Mar 23, 2020]).

28. Generally, courts apply the same standards of proof for claims under Section 1981 as applies to Title VII claims (*Manatt v. Bank of Am., NA*, 339 F3d 792, 797 [9th Cir 2003]).

29. Plaintiff is a member of a protected class, as he is an African American male.

30. He was qualified for his job for the entirety of his employment. Plaintiff frequently received praise and never was disciplined in nearly twelve years that he spent with the company.

31. Plaintiff was terminated shortly after he overheard management refer to both himself and two other African American men as "coons."

32. The proffered reason for his termination was, at most, a minor infraction which would not rise to the level of a fire-able offense.

33. Plaintiff believes, and therefore avers, that the proffered reason for his termination was mere pre-text.

34. Plaintiff believes, and therefore avers, that he was terminated from his position on the basis of his race.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## DEMAND FOR PRESERVATION OF EVIDENCE

Addendum attached.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby requests that this Court enter judgment in his favor, and against the Defendant, and award all damages available, at law and in equity, including, but not limited to: 1) back pay, 2) front pay, 3) compensatory damages, 4) punitive damages, 5) prejudgment and continuing interest, 5) reasonable attorney's fees, and 6) any other relief which this court deems necessary and proper.

Dated: June 6, 2020

_/s/ Shelly A. Leonard_

**BLAU LEONARD LAW GROUP LLC**
Shelly A. Leonard
Steven Bennett Blau
23 Green Street, Suite 105
Huntington, New York 11743
631.458.1010
sleonard@blauleonardlaw.com
sblau@blauleonardlaw.com

and

**RUPPERT MANES NARAHARI LLC**
Sean L. Ruppert
600 Grant Street, Suite 4875
Pittsburgh, Pennsylvania 15219
412.626.5550
sr@rmn-law.com
(*pro hoc admission forthcoming*)
*Attorneys for Plaintiff*

## ADDENDUM "1"
## DEMAND FOR PRESERVATION

PLEASE TAKE NOTICE that OLD DOMINION FREIGHT LINE, INC is not to destroy, conceal or alter in any manner whatsoever any or all evidence, documents, information, paper or electronic data and/or other tangible items pertaining or relevant to materials discoverable in the above referenced matter.

This notice applies to OLD DOMINION FREIGHT LINE, INC's on- and off-site computer systems and removable electronic media, plus all computer systems, services, and devices (including all remote access and wireless devices) used for your overall operation. This includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, codes keys and other support information needed to fully search, use, and access the electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.